**Mrs. Walter H. Reitz, Appellee, v. Yellow Cab Company, Appellant.**

Gen. No. 32,243.

288

Opinion filed March 29, 1928.

SAMUELS, COSTELLO & GREENBERG and ROSE & SYMMES, for appellant.

ARTHUR U. FORMAN and CHARLES C. SPENCER, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

Plaintiff was a passenger in a Yellow cab of defendant, going in a southerly direction on Central Park avenue, near 16th street, Chicago, on January 5, 1924. The driver of the cab drove it into a depression or hole in the street while proceeding at a rapid rate of speed,

causing the plaintiff to bounce up against the top of the cab. In coming down she struck her hip against the seat. At the time she was pregnant and a few days later suffered a miscarriage, which affected her health, and it was claimed that the miscarriage and other incidents following in its wake were the result of and attributable to the accident.

The declaration consisted of two counts, substantially averring the occurrences, as above set out, to which the defendant interposed a plea of the general issue. On the issues so joined the cause proceeded to trial before court and jury. As no questions arise upon the pleadings, we will not further recite them.

Defendant put in evidence a release signed by the plaintiff for the consideration of $10. Plaintiff contended that the $10 was received for the purpose of repairing the torn place in her coat, and that she signed the release without reading it and that the agent of the defendant did not read the same to her, but did state that it was for the purpose of enabling her to have the tear in her coat repaired.

The trial resulted in a verdict of guilty and an assessment of damages at the sum of $2,500. Both parties moved for a new trial, which was not acted upon until 10 months after the rendition of the verdict. Motions for a new trial were overruled and the court entered a judgment upon the verdict, adding thereto statutory interest for the time between the rendering of the verdict and the overruling of the motions for a new trial, of $104, and a judgment was entered for $2,604, from which judgment defendant prosecutes this appeal.

Defendant assigns for error and argues for reversal that plaintiff was not in the exercise of due care for her own safety at the time she was injured; that the release executed by her is a defense to the action; that the court erred in denying defendant's motion to withdraw a juror, and also erred in allowing Dr. Smith to testify that the condition of the cervix of the plaintiff,

as it was found after the miscarriage, was caused by the miscarriage; that the court erred in giving instructions Nos. 2 and 8 at the request of plaintiff, and refusing to give instructions Nos. 7, 9, 13 and 15 requested by defendant, and that it was error to include interest in the judgment on the verdict.

In its brief defendant states that about two o'clock of the afternoon of Saturday, January 5, 1924, plaintiff took a cab of defendant on Madison and Lotus streets, Chicago, to go to 22nd street and 58th avenue, and to go there was driven west two blocks to Central Park avenue, and then south on that avenue to 22nd street. When the cab in going south on Central Park avenue reached near to about 16th street, it ran into a depression in the avenue, which jolted the plaintiff in the cab, and when the cab reached plaintiff's destination, plaintiff showed the driver of the cab her coat which had a tear in it at a button, and asked him what he was going to do about it; that he took her name and address and said that he would report the case for the plaintiff; that on the following Monday morning an adjuster for the defendant called on plaintiff, paid her $10 and took a release from her by the terms of which she released the defendant from all claims which she had against it, and at the same time he took her statement of the accident, which was to the effect that at 16th street the cab had struck a depression in the street, and as a result of its striking this depression her head had collided with the roof of the cab and she had torn her coat; that on the following Saturday she suffered a miscarriage. The defendant then goes on to say: "As to the foregoing facts, there is, we believe, no dispute in the evidence; but as to the negligence of the defendant, the effect of the release, and the cause of the miscarriage there is positive controversy—the plaintiff giving evidence tending to show that the defendant was going at a rate of speed of from thirty to thirty-five miles an hour; that the release released the defendant for damage to the coat only, and that the

miscarriage was caused by the jolting of the plaintiff; and the defendant giving evidence tending to show that it was going at about twenty miles an hour; that the depression was by reason of being covered with snow not visible; that the release released all claims of the plaintiff, and that the jolting of the plaintiff was not the cause of the miscarriage." Plaintiff and the cab driver were the only witnesses testifying as to the cause of the accident.

Defendant argues that because plaintiff did not give some warning to the driver of the cab that there was a hole in the street, she was not in the exercise of due care for her own safety. Defendant was a common carrier and plaintiff was a passenger for hire. In the first place, it is not contradicted that the day was extremely cold, and that it was about 20 degrees below zero. The jury might have assumed, without evidence, that the windows of the cab were closed and were covered with frost and were thereby rendered opaque, therefore it would have been impossible for plaintiff to have seen the condition of the road as the cab was driven along. However, this principle of law has no application to a carrier-passenger case. It was the duty of the carrier to use all necessary precautions to carry the passenger safely to his destination, and no duty rested upon the passenger to warn the driver of impending dangers. That is solely the driver's duty.

However, defendant has caused the law to be clarified upon this subject. In the case of *Hoffman v. Yellow Cab Co.*, 238 Ill. App. 269, where the same point was made in a similar situation, this court decided that the driver had a better opportunity than the plaintiff had to see the approaching automobile with which he collided, but that if he did not see it, "it does not follow, as a matter of law, or a necessary conclusion of fact, that plaintiff's failure to warn the driver was negligence on his part or that it contributed in any degree to cause the accident in question. * * * A warning to the driver from a rear-seat passenger

might well distract the driver's attention, thereby tending rather to cause than to prevent such an accident." Citing *Hedges v. Mitchell*, 69 Colo. 285.

Defendant's attempt to avail of the release which was put in evidence is impotent for the reason that it was obtained by the agent of defendant in a fraudulent manner. Defendant cites *Papke v. G. H. Hammond Co.*, 192 Ill. 631, which is contrary to its contention in this regard. In pointing out under what circumstances a release may be avoided in an action at law, the court said:

"In such cases, there may be fraud, which inheres in the execution of the instrument; that is to say, where the signer of the instrument is deceived into signing it by the belief that he is signing something other than that which he does really sign. Fraud in the execution of the instrument is practiced, where the instrument is misread to the party signing it, or where there is a surreptitious substitution of one paper for another, or where, by some other trick or device, a party is made to sign an instrument which he did not intend to execute. In such cases, the nature of the instrument signed is not fully understood by the party signing it."

The accident happened on Saturday and on the following Monday an adjuster of defendant called. Plaintiff was then suffering from the effects of the accident. The adjuster then referred to the damage to plaintiff's coat, in which there was a tear near a button, and after discussion they agree that $10 would repair that damage. Thereupon the adjuster paid the $10, and prepared a general release without reading it to plaintiff or explaining its contents to her, and the plaintiff in her distressed condition did not read it and did not know at the time that she was signing a release for her injuries suffered from the negligent driving of defendant's servant. This in the teeth of the fact that plaintiff detailed to the adjuster the occurrence which re-

sulted in her injury, and also her physical condition of pregnancy, to which he responded: "I will give you a form to fill out, and to have your doctor fill out, if anything further develops." And before she signed the release, the adjuster said to plaintiff: "You sign this for the $10 which will take care of the repair of your coat." She signed it on this verbal representation.

We think this conduct on the part of the adjuster was a fraud upon the plaintiff and that the release was secured by the false representation that it was simply payment for damage to her coat, and not to her person, and that the pretenses on which the adjuster procured plaintiff to sign the release were false. We think this case is within the decision of *Chicago, R. I. & P. Ry. Co. v. Lewis,* 109 Ill. 120, and *Eagle Packet Co. v. Defries,* 94 Ill. 598.

The question of fraud in obtaining the release was submitted to the jury under proper instructions, and their finding is supported by the evidence of plaintiff and all of the environing circumstances. It would be absurd to contend that in the physical situation in which the plaintiff was found at the time she was induced to sign the release, the payment to her of $10.00 was for personal injuries suffered by plaintiff in the accident brought about by the negligence of defendant's servant, or that such payment was for anything more than payment for the damage done to plaintiff's coat, as testified to by her. The jury were justified under the evidence and the instructions of the court to disregard the release as a defense to the action. The jury were warranted in finding from the evidence that the release was obtained from plaintiff by the fraudulent representations of its adjuster detailed by plaintiff in her testimony.

The argument that the court should have allowed defendant's motion to withdraw a juror, based on the fact that an envelope given to plaintiff by defendant's adjuster had upon it "Prairie State Insurance Asso-

ciation,'' referred to in the testimony of plaintiff's husband, was not an attempt to inform the jury or to lead them to believe that defendant was covered by insurance with the Prairie State Insurance Association. There was nothing to warrant such inference by anything which the witness said. It came out in quite an incidental manner, and the responsibility for its being referred to rests with the defendant, who furnished the envelope and thereby injected it into the case. The whole matter came out in the testimony of plaintiff's husband as to his recollection whether he had telephoned the defendant company in regard to the plaintiff's miscarriage. While he testified at first that he had called Jablon, the adjuster of defendant, he afterwards said that he would correct that statement, that he might have called the Prairie State Insurance Association, and that he did not remember it, which is all the evidence to be found in the record regarding any reference to the Prairie State Insurance Association.

The plaintiff testified that Jablon had asked her to communicate with the Prairie State Insurance Association if anything further developed, and it was in an attempt to follow Jablon's request that the husband made an attempt to communicate either with Jablon or the Prairie State Insurance Association. In any view that may be taken of the matter, the reference was of a harmless character.

The defendant objects to certain questions put to Dr. Smith and the answers made by him thereto, as follows:

''Q. Now, doctor, from your treatments and examinations at all of these periods of time of Mrs. Reitz, could you form an opinion as to whether or not the condition of the cervix which you found just prior to this operation in 1926, was the result of any of the miscarriage? A. Yes.

''Q. In your opinion, was it or was it not the result of the miscarriage? A. It was.''

Dr. Smith was the attending physician and present at the time of the miscarriage referred to, for which he treated the plaintiff, and performed an operation upon her. These questions were not hypothetical, but put to the attending physician who knew from personal treatment of the plaintiff the conditions about which he was interrogated. The objection is without force, and the ruling of the court thereon without error.

While it is true that Dr. Tenney and Dr. Greenspahn testified in substance in contradiction of Dr. Smith that there was no causal connection between the accident and the miscarriage and that the accident had nothing to do with appendicitis for which plaintiff was afterwards operated on, still the question was one of fact for the jury, and they evidently believed Dr. Smith, whose opportunity for knowing about what he testified to was much greater than that of Dr. Tenney or Dr. Greenspahn, and an examination of the testimony of these three medical men impels us to the same conclusion as that evidenced by the jury's verdict.

The court did not err in its instructions to the jury. Defendant objects to instruction No. 2 on the ground that while it is a good instruction, there is no evidence on which to base it. The instruction refers to the legal effect of circumstantial evidence, and there is testimony in plaintiff's evidence, of a circumstantial character, regarding the manner of the occurrence of the accident, and the circumstances involved in the procuring of the general release from the plaintiff, and whether the testimony of Jablon, the adjuster, wherein it was in conflict with that of plaintiff, was the correct version of what took place at the time he procured the release. We think the instruction was fully supported by the facts in evidence. As held in *United States Brewing Co. v. Stoltenberg,* 211 Ill. 531, so we hold here that there was no error in the instruction. Instructions of like character have been applied by the court in many cases, including *North Chicago St. Ry.*

*Co. v. Rodert,* 203 Ill. 413; *Miller v. Balthasser,* 78 Ill. 302; *Slack v. Harris,* 200 Ill. 96.

The court said in *Chicago & E. I. R. Co. v. Beaver,* 199 Ill. 34:

"It was necessary to a right of recovery it should be made to appear the deceased was in the exercise of due care and caution for his own safety, but it is not indispensable it should be established by direct proof. It may be shown by circumstantial evidence, or, as has been sometimes said, it may be inferred by the jury from circumstances appearing in the proof."

Instruction No. 8 correctly instructed the jury regarding the law applicable to the evidence concerning the manner in which the defendant procured the release from the plaintiff. There was naught erroneous in that instruction, and it was one that was necessary to be given as a guide to the jury upon the law affecting the manner in which the defendant obtained the release from plaintiff.

There was no error in the refusal by the court to give defendant's instructions Nos. 7, 9, 13 and 15.

Instruction No. 7 is in effect the same as plaintiff's instruction No. 16. Instruction No. 9 is in the similitude of defendant's instruction No. 20. Instruction No. 13 is covered by instruction No. 8, given at the instance of plaintiff, and was also nearly a duplicate of instruction No. 28 given at the instance of defendant, or in other words, the jury were fully instructed in the instructions given upon the questions recited in instruction No. 13. And the same may be said of defendant's refused instruction No. 15.

There was no error in adding to the verdict of the jury interest between the time when the verdict was rendered and the judgment entered. The statute so provides in section 3, chapter 74, R. S. Cahill's compilation. It is true that the delay in disposing of the motion for a new trial was extraordinary, but such delay is not chargeable, as counsel indicate, to plaintiff.

Counsel were on a parity. Each could have moved the judge at any time upon giving appropriate notice for a judgment on the verdict or for a new trial. An examination of the record shows that the case was tried before a judge an alien to Cook county, and it may be that the long delay resulted from the inability of the trial judge to leave his own court to sit in Chicago earlier.

We are satisfied that the parties had a fair trial and that there is no reversible error in the record, and that the verdict of the jury and the judgment of the court do justice between the parties. Therefore, the judgment of the circuit court is affirmed.

*Affirmed.*

TAYLOR, P. J., and WILSON, J., concur.