Virginia M. Seyferlich, Plaintiff-Appellee, v. Mark T. Maxwell, Defendant-Appellant.

Gen. No. 48,068.

First District, Second Division.
January 24, 1961.

470

Louis B. Simon, of Chicago (Edward Wolfe and Maurice Abrams, of counsel) for appellant.

Harry I. Parsons, of Chicago (Charles D. Snewind and Edward J. Fleming, of counsel) for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court.

This is an action for personal injuries sustained by the plaintiff, Virginia M. Seyferlich, in an automobile collision which occurred near the intersection of Sheridan Road and Belmont Avenue in Chicago. The jury awarded the plaintiff damages in the sum of $12,000 and the defendant appeals from the judgment and the denial of his post trial motion for a new trial.

The two principal issues on this appeal are (1) whether the damages awarded were so grossly excessive as to indicate passion and prejudice on the part of the jury and (2) whether the reference to the defendant's insurance by the plaintiff's attorney in his cross-examination of the defendant's witness required the trial court to declare a mistrial.

This was a rear-end collision case. The accident occurred about 9:00 a.m. on December 28, 1951. The plaintiff was on her way to work as an interior decorator in the firm of Watson and Boaler and was sitting in the front seat of an automobile driven by her husband. The weather was inclement and the pavement was covered with ice and snow. The plaintiff's car went through the intersection on a green light and stopped for several minutes in the middle of the block on Belmont Avenue as a bus ten to twelve feet ahead was stuck in the snow and was blocking the northbound and southbound traffic. The defendant approached the plaintiff's stopped car from the rear, stepped on his brakes and skidded into the plaintiff's car. The defendant does not contest the question of his liability or his negligence and that is not in issue here.

The impact of the collision threw the plaintiff forward and stunned her. The unrefuted medical evidence indicated that she suffered a "whiplash" injury; that is, her head was forcibly thrown forward and backward, snapping the neck, which resulted in a sprain of the cervical spine.

The plaintiff consulted her physician at the office and was advised to go to the Ravenswood Hospital. At the hospital, X-rays were taken and she was required to wear a heavy felt cervical support collar to hold her neck in a rigid position. She wore the collar almost continually for nine months after the accident and gradually discontinued its use by degrees until she was finally able to discard it altogether in 1957. Also, in order to relieve the pain, she had to use a traction halter, which required her to bear the weight of eight to twelve pounds suspended from her neck for a couple of hours in the evening for at least four months.

On May 6, 1952, the plaintiff had another X-ray taken which indicated that there was a beginning narrowing of the little cushion between the fifth and sixth cervical vertebrae.

On June 10, 1953, the plaintiff was involved in another rear-end collision. The plaintiff's car stopped at an intersection; a car driven by Mr. Paul Hirsch hit the plaintiff's vehicle from the rear. The plaintiff went back to Dr. Farrington's office to determine if this accident had any effect on her earlier condition. Another X-ray was taken on June 11, 1953, which indicated that there was no change in the narrowing of the little cushion between the fifth and sixth cervical vertebrae. She was advised to go back to the support which she had been using intermittently over the years. The plaintiff filed no claim for the second accident nor did she ever receive any compensation for it.

Dr. Farrington testified that the sprain to the cervical spine would cause pain in the neck, arm and cervical spine. He also stated that the changes in the cervical

472

spine, the bony changes, were permanent. He would not say categorically that the narrowing was directly caused by the accident of December 28, 1951, but indicated that it also could be the result of ordinary activity.

The defendant's main contention is that the damages awarded were grossly excessive when considered in the light of the facts, the medical testimony and the alleged failure of the plaintiff to show any loss of earnings by reason of the injury.

██ The question of permanency of the injury and the pain and suffering resulting from the accident are of course questions for the jury to determine. 15 I. L. P. 614, Damages, 261. The defendant did not attempt to refute the testimony of Dr. Farrington and it was within the province of the jury to conclude that the plaintiff's permanent injury and her pain and suffering were caused by the accident of December 28, 1951.

The plaintiff testified that she had followed the interior decorating business for twenty-two years. She said that during the six years she worked for Watson and Boaler (May 7, 1947 to April 15, 1953) she thought she averaged approximately $6,000 per year up to the time of the accident and estimated that her loss of earnings as the result of the accident of December 28, 1951 to be "approximately around $4,000." In 1953, she left Watson and Boaler to go into business with her husband.

She said that her work as an interior decorator often required her to be on her feet ten to twelve hours a day and that her duties included rearranging furniture and measuring rooms and other activities which required physical exertion on her part. She testified that the pain in her neck, shoulder and arms tended to restrict her activities.

She was confined to her home for a week following the accident and when she returned to work wearing

the cervical support collar, her desk was raised on a platform in order to raise the level of the desk.

The plaintiff also testified to a severe attack in January 1956 when she experienced excruciating pains in her shoulder and head. She was hospitalized for two weeks following this seizure during which time she was required to wear a twelve pound traction halter for twenty-four hours a day. After she was released from the hospital, she was confined to her home for an additional two weeks.

The defendant argues that the plaintiff failed to establish any loss of earnings or earning capacity. A record of her earnings from January 1951 to April 1953 was introduced at the trial and indicated that the plaintiff's gross earnings were $4,193.22 for 1951, $4,491.10 for 1952 and $2,320.32 for the four and one half months in 1953.

Her earnings were computed on the basis of 6% of the gross value of the jobs she worked on. The plaintiff explained that it took six to eight months for a job to go through the various stages of planning, sales, delivery, installation and payment, so that most of her commissions in 1952 had actually been earned in 1951, prior to the accident.

██ Plaintiff's counsel urges that the question of the plaintiff's loss of earnings and diminution of earning capacity was clearly a question for the jury. This is of course well established law. The jury may have determined that the plaintiff's earning capacity was impaired by the accident and that but for the accident, she might have earned considerably more. There is no indication that the jury was moved by passion and prejudice and in view of the plaintiff's long disability and pain and suffering, the amount of the verdict does not appear to be unduly excessive. We would have to find that the findings of the jury in this respect were clearly against the manifest weight of the evidence and this we cannot do.

The final point raised by the defendant is that the trial court erred in not declaring a mistrial when the trial court inadvertently permitted plaintiff's counsel, on the cross-examination of the defendant's witness, to read an excerpt from the defendant's exhibit, which could be construed to mean that the defendant was insured.

The defendant's exhibit was a statement obtained from the plaintiff, Mrs. Seyferlich, by an insurance adjuster, Mr. Colclesser, in regard to the accident of June 10, 1953, with Mr. Paul Hirsch. The plaintiff's attorney desired to read a portion of the statement. The trial judge glanced at the statement and informed the plaintiff's attorney that except for the sentence, "I do not know that amount of the claim he has presented to the insurance company," it was permissible to read anything in it that was pertinent to the inquiry.

The plaintiff's attorney thereupon read the following passage: "On the previous accident I never made a settlement with the other insurance company whose name I can't remember and have it in the hands of my attorney, Mr. (blank)." Plaintiff's attorney then asked Mr. Colclesser whether Mrs. Seyferlich told him that he was her lawyer.

The defendant objected and the trial court ordered the statement stricken and denied the defendant's motion for a mistrial. He then instructed the jury to disregard the statement.

In the hearing on the motion for a new trial, the trial judge stated that he did not think that the reference to the insurance in any way influenced the verdict. However, he intimated that the plaintiff's counsel should have known what he was trying to avoid when he eliminated the other reference to insurance in the defendant's exhibit.

 The general rule is that insurance coverage is inadmissible on the grounds of irrelevancy as it has no bearing on the question of negligence. The

doctrine is in transition, however, and there has been established numerous exceptions and competing considerations. It is admissible to show agency, ownership or control of the vehicle or instrumentality (Vacker v. Yeager, 151 Ill. App. 144, Watson v. Trinz 274 Ill. App. 379) or to show bias or interest of a witness. Moore v. Young, 317 Ill. App. 474, 46 N.E.2d 852. It may be elicited unintentionally by examining counsel when the witness, unaware of the "conspiracy of silence," makes an unresponsive reference to insurance. McCormick on Evidence, p. 356. Reitz v. Yellow Cab Co., 248 Ill. App. 287. Hoffman v. Jenard, 334 Ill. App. 74, 78 N.E.2d 322. It may also be introduced in evidence when a party makes a statement amounting to an admission of liability and the jury is thereby incidentally apprised of the insurance coverage. 4 A.L.R.2d 781, Garee v. McDonnell, (C.C.A. 7th Ill.,) 116 F.2d 78. Finally, the jurors may be questioned on voir dire as to their possible connection or interest in an insurance company when this information is necessary for the intelligent exercise of the right of peremptory challenge and is sought in good faith. Kavanaugh v. Parret, 379 Ill. 273, 40 N.E.2d 501. Wheeler v. Rudek, 397 Ill. 438, 74 N. E. 601.

In the last cited case, Wheeler v. Rudek, supra, the majority of the court reversed a judgment where the plaintiff's attorney's affidavit in support of his examination of the jurors on voir dire as to their interest in or relationship to an insurance company failed to show a reasonable probability that they were interested in the insurance company. In a vigorous dissenting opinion, Mr. Justice Wilson decried the special privilege afforded to the insurance companies in metropolitan areas. He stated that

> "So long as we employ the jury system, we must accord to the jury some sense of obligation in following the instructions of the court, namely,

476

to treat both parties impartially and without prejudice. The principal opinion in this case assumes that the jury cannot exercise a fair judgment if the fact is suggested that the defendant is insured. The fact is the insurance company is the real party in interest but secures an advantage in the selection of the jury, by reason of the opinion, which it otherwise would not have." 397 Ill. 450–1.

Mr. Justice Thompson, also dissenting, stated that

"I am also inclined to believe defendants in such cases are over-sensitive for fear a breath of suspicion may enter the minds of the jury that the defendant is insured. In this day and age it is common knowledge that most, if not all, automobile owners carry insurance and in the trial of cases the defense is usually conducted by the insurer."

Wheeler v. Rudek, 397 Ill. 438, 456.

The plaintiff contends that the statement in the defendant's exhibit, which inferentially revealed that the defendant was insured, was brought out in cross-examination for the purpose of determining the method employed by Mr. Colclesser in obtaining and preparing the statement. The plaintiff maintains that the defendant invited the error by introducing the statement into evidence and that in other jurisdictions, it has been held that if the document was otherwise admissible in evidence, the fact that it contains an incidental reference to insurance would not constitute reversible error. 4 A.L.R.2d 781. The plaintiff's position is that it was merely a harmless error and where the case is not close on the facts and the jury was instructed to disregard the reference to insurance, and the trial court stated that he did not feel that the jury was in any way influenced by it, the judgment should be

477

affirmed. The plaintiff relies on the case of Pinkerton v. Oak Park Nat. Bank, 16 Ill.App.2d 91, 147 N.E.2d 390, for the proposition that the test as to whether a reference to insurance constitutes reversible error is whether the jury was influenced by passion and prejudice.

In the Pinkerton case, this court held that it was not reversible error for the plaintiff's attorney on redirect examination to have the plaintiff identify the men who took an impeaching statement as employees of an insurance company. This court said that the fact that they were connected with an insurance company would properly go to the validity and weight of the statement which the defendants were using for impeaching purposes. The record in that case, as in the present case, did not indicate that the interrogation was done in any inflammatory manner or that it was intended to arouse passion and prejudice. This court reviewed the various decisions dealing with the problem of maintaining a "hush, hush" policy in regard to insurance coverage and concluded that where there were other competing considerations, such as showing the bias of a witness, and the fact of insurance coverage was revealed in the process, this would not be sufficient to reverse a judgment if the verdict did not indicate that it was motivated by passion or prejudice.

██ There seems to be no valid reason for not extending the rationale of the Pinkerton case to the case at bar. The defendant placed the exhibit in evidence and attempted to use it for the purpose of impeaching the plaintiff. While counsel for the plaintiff should have realized that the passage relating to insurance was irrelevant and was not necessary for the avowed purpose of the question, still it was within the discretion of the trial court to determine whether this warranted a mistrial.

The trial court determined that the reference to insurance did not affect the results of the verdict in

478

any way. The case was not close on the question of liability and negligence. The verdict was not excessive in view of the plaintiff's long disability, permanent injuries and extended period of pain and suffering. Under the circumstances in this case, it was not reversible error to deny the defendant's motion for a mistrial.

The judgment of the Circuit Court is affirmed.

BURKE, P. J. and FRIEND, J., concur.