Thomas Biel, Plaintiff-Respondent-Appellee, Cross-Appellant, v. Charles W. Wolff, Defendant-Petitioner-Appellant, Cross-Appellee.

Gen. No. 52,832.

First District, Fourth Division.

June 10, 1970.

■■■

John G. Phillips, of Chicago (Ellis B. Rosenzweig, of counsel), for plaintiff-respondent-appellee, cross-appellant.

Beverly & Pause, of Chicago (Robert O. Duffy, of counsel), for defendant-petitioner-appellant, cross-appellee.

MR. PRESIDING JUSTICE STAMOS delivered the opinion of the court.

Plaintiff, Thomas Biel, brought an action for damages for personal injuries resulting from the alleged negligent operation of a motor vehicle by defendant, Charles W. Wolff, who struck plaintiff, a pedestrian. The jury returned a verdict for defendant. Plaintiff filed motions for judgment notwithstanding the verdict on liability or in the alternative for a new trial. The court granted a new trial on the grounds that prejudicial errors were committed and the verdict was contrary to the weight of the evidence. Defendant filed a petition for leave to appeal which was allowed. Plaintiff also appeals and contends that the court should have granted plaintiff's motion for a judgment notwithstanding the verdict on the issue of liability.

The accident occurred on Sunday, February 3, 1963, at approximately 1:00 a. m., on Joe Orr Road west of Dixie Highway in Cook County, Illinois. It was a clear, cold winter night and the temperature was 7 degrees above zero. There was a recent accumulation of snowfall of about 6 inches. However, the road was cleared of snow but snowbanks were created on each side of the road by snowplows. Joe Orr Road is a 2-lane east-west blacktopped road and is 20 feet wide. Along the north side of

Joe Orr Road, west of Dixie Highway is the Ranch House Restaurant, which is set back from the road with a parking lot and two gravel driveways leading into Joe Orr Road. Along the south side of Joe Orr Road, De Angelis Court runs south from Joe Orr Road, approximately ½ block west of Dixie Highway and ½ block further west Willow Street runs south from Joe Orr Road, both these streets form a "T" intersection with Joe Orr Road. There are no sidewalks off either side of Joe Orr Road. Defendant's vehicle struck plaintiff some 200 feet west of the intersection of Dixie Highway and about 20 to 25 feet east of the western driveway of the Ranch House parking lot and north of the west sidewalk of De Angelis Court.

Plaintiff was a 20-year-old college student, and on the evening of February 2, 1963, he was in the company of two friends, Phillip Piazza and Craig Benjamin as they walked east on the north side of Joe Orr Road on their way to visit a nearby bowling alley. Piazza crossed on the south side of the road in an attempt to seek a ride from some eastbound motorist. Plaintiff testified he continued to walk on the shoulder of the north side of Joe Orr Road and he was about 15 to 20 feet directly behind Benjamin. The last thing plaintiff remembered was that he approached the Ranch House Restaurant driveway, at which point he was struck by defendant's vehicle.

Plaintiff testified that he was walking on the dirt and gravel shoulder of the road at the moment of impact. Plaintiff and defendant testified that there were 2 or 3 feet between the edge of the road and the snowbank which had been created by snowplows.

Defendant testified that he was operating his vehicle at about 20 or 30 m. p. h. and proceeding in a westerly direction on Joe Orr Road and his wife was seated next to him. As they crossed Dixie Highway he observed an eastbound car and concentrated on meeting and passing it safely. As the two vehicles approached each other,

plaintiff was perceived about 20 to 25 feet ahead of defendant's vehicle running from south to north in the westbound lane. He applied his brakes, but the right front of the vehicle struck plaintiff.

Defendant's wife testified that it was a clear, black night and everything was dark along Joe Orr Road west of Dixie Highway. There was an approaching eastbound vehicle in its proper lane and she observed a figure in front of this eastbound vehicle and was about to call to her husband when she observed a figure in front of their car moving from south to north, and another on the shoulder of the road. The three figures appeared simultaneously. She closed her eyes and screamed. The brakes of their car were being applied before or just about the same instant she screamed.

Piazza was called by plaintiff and testified there was artificial lighting in the area of the occurrence. He had crossed over to the south shoulder and was some 5 to 10 feet east of plaintiff and Benjamin when he saw defendant's vehicle with its headlights lighted and at about the same time, saw the eastbound vehicle. Defendant's vehicle passed and he observed that it was in its proper lane. Then he heard plaintiff struck and saw him hit the pavement, and noticed defendant's vehicle still in motion in its proper westbound lane.

Frank Opsahl testified for the defense that he was a passenger in a vehicle proceeding west on Joe Orr Road at approximately 1:00 a. m. and observed 2 or 3 figures running or trotting in a westerly direction on the north side of the road somewhere in front of the Ranch House Restaurant. He further testified that the snowbank on the north side of the road came up to the road. That his vehicle continued one block west to Willow Street and turned around to reenter Joe Orr Road when he became aware that an accident had taken place in front of the Ranch House Restaurant.

It is undisputed that the headlights of defendant's vehicle were functioning properly. Defendant testified he could see between 340 and 680 feet straight ahead, and about 60 to 80 feet to his right and left. A lighting engineer testified that a streetlight fixture at the corner of De Angelis and Joe Orr was installed 25 feet above the ground and it would cast sufficient light to permit a person's silhouette to be seen from a distance in excess of 1,000 feet and would have a primary concentration of light covered in a circle of 62½ feet in diameter. This light was functioning at the time of the accident.

In addition to the foregoing streetlight, it was established that the two floodlights on the Ranch House Restaurant were lighted and projected light onto the parking lot and driveways leading to Joe Orr Road.

Plaintiff also presented a nearby resident and the ambulance driver who removed plaintiff to the hospital, who also testified that the lighting conditions at the scene were good. Defendant presented the testimony of a service station operator whose place of business is at the intersection of Joe Orr Road and Dixie Highway, and that of a nearby resident, who testified that the scene was dark and the lamppost made a circle of light which did not light up the north side of Joe Orr Road "too good." The police officer, Konley, who investigated the accident, also testified in cross-examination that the lighting conditions were poor; that there were streetlights, but it was very poorly lit up.

Plaintiff sustained a laceration over the left eye and forehead and a cut on the back of the tongue. These injuries were sutured. There was also a laceration of the left leg below the knee and multiple contusions and abrasions of both legs. Plaintiff developed "foot drop" and the diagnosis was a tear of the lateral-collateral ligament of the right knee and peroneal nerve. Surgery was performed on the knee and at the time of trial, plaintiff was suffering from an instability of this knee.

215

A radiology specialist examined plaintiff's X rays, recited the pathology they disclosed and also expressed an opinion as to the manner in which plaintiff sustained his injuries. This witness testified that the sequence of events would indicate that the trauma that arose to those two extremities occurred from the left side and slightly to the front. That the left leg was hit from the left side and started to collapse, and then was driven against the inside of the right leg, which then collapsed.

OPINION

Defendant contends that there was a fair trial and that the verdict was not against the manifest weight of the evidence.* Plaintiff contends that the trial court did not abuse its discretion in granting a new trial because of intervening prejudicial errors and that the verdict for defendant was against the manifest weight of the evidence * and also contends that the court erred in not granting plaintiff's motion for a judgment notwithstanding the verdict on the issue of liability.

The following are presented as matters that deprived plaintiff of a fair trial:

1. Witnesses presented who were not listed in Answer to Interrogatories,
2. Defendant's wife weeping in the presence of the jury,
3. Prejudicial instruction,
4. Misleading argument,
5. Improper introduction of a police report,
6. Improper impeachment,
7. Improperly arguing the failure of Craig Benjamin to testify.

---

* Although both parties argue "manifest weight" of the evidence, the proper standard in the granting of a new trial is whether the evidence is contrary to the "preponderance of the evidence." See our comments in this opinion, infra.

■ We first address ourselves to the purported error in permitting witnesses to testify on defendant's behalf whose names were not furnished in Answers to Interrogatories. The witnesses were the gas station attendant, the former owner of the Ranch House Restaurant and a resident in the vicinity of the accident. These witnesses were discovered shortly before trial and more than 3 years after the furnishing of the Answers to Interrogatories and were in the nature of rebuttal witnesses regarding the lighting conditions at the scene. We find no error in permitting them to testify.

■ Plaintiff argues that defendant's wife adopted a pathetic attitude and was crying during closing argument. However, plaintiff failed to object, call this to the court's attention or to memorialize this episode in the record until the motion for a new trial. We note that the trial court, during the argument on the motion for a new trial, expressed a vague recollection of the incident, but related that it was not a determinative factor, nor did the court place any particular weight on this point in making a resolution regarding the granting of the new trial.

■ The instruction complained of is a recitation of section 78 of the Uniform Act Regulating Traffic on Highways, Ill Rev Stats, c 95½, § 175 (1967) on the subject of pedestrians walking on highways. It was given in the manner prescribed in IPI No. 60.01. We find no error in the giving of this instruction. Plaintiff alludes to Moore v. Young, 317 Ill App 474, 46 NE2d 852 (1943) in support of his argument, but in that case the mere abstract statement of the law was expressed without the additional language found in IPI No. 60.01, defining to the jury the effect of a violation of the statute and advising the jury in effect that a statutory violation is not negligence per se, but must be considered with all other facts and circumstances in evidence in determining negligence and contributory negligence.

217

Plaintiff complains that the jury was misled by the defense argument regarding the issues and specifically alludes to the following excerpt from the argument:

"Isn't the issue in this case, simply, was the plaintiff on the road or was the plaintiff on the shoulder of the road at the time this accident occurred? Isn't that the issue? What else can be the issue in this case?"

Plaintiff argues that the foregoing argument was not a simplification of the evidence, but a plain distortion of the legal standards and duties of a driver toward a pedestrian and prejudiced the jury against plaintiff. ■ Plaintiff did not object at the time this argument was made. In Lindroth v. Walgreen Co., 407 Ill 121, 136, 94 NE2d 847, the court said:

"No objection was made at the time the argument was made, nor was the court requested to take any action regarding the remarks until after the verdict. This question is not open for consideration in this court in such case."

Regardless, we do not find this argument to be error. Defendant also argued that if the jury believed plaintiff was on the shoulder when he was struck they should return a verdict in plaintiff's favor and also said, ". . . has the plaintiff sustained his burden on this issue? Let's look at the evidence." ■ Plaintiff responded in closing argument and cited what he believed were 6 issues raised by the law and the evidence and told the jury: ". . . I challenge you when you go to the jury room to find anything that says that the issue is: Was the plaintiff on the road or on the shoulder?" Plaintiff called Police Officer Donald Konley as an impeaching witness in rebuttal to defendant's testimony. The officer related that he arrived at the scene and

interrogated defendant and reduced the interview to a written statement. A copy of this statement was identified by the officer in court and after refreshing his recollection, he related the following to the jury. That defendant said: "The road was slippery at that spot and I could not stop in time. I was traveling about 15 miles an hour and that there was a high snowbank on the right as I was going west and as I crossed Dixie Highway, an oncoming car was traveling east approaching me and I was concentrating on this vehicle and the snowbank on the right. When I first seen the pedestrian was when he was in the middle of my lane crossing to the north side of the street. I just left Dixie Highway which has a stoplight."

Defendant had testified that the road was dry and he did not skid and denied telling a police officer that he slipped on any icy spot, that he did not look to his right, but to the left at the eastbound vehicle and that plaintiff was running across Joe Orr Road from south to north.

Plaintiff argues that the police officer's testimony was specifically limited to prior inconsistent statements by defendant and defendant engaged in prejudicial cross-examination of the officer, over plaintiff's objection, in having the officer relate the remainder of the statement wherein defendant related that he stopped as soon as he could, offered to take plaintiff to the hospital and went with the police to the police station, that these statements were self-serving and evoked sympathy for defendant.

■ It is well established that when one party brings out a portion of a conversation, the other party may cross-examine on all of the conversation, but the scope is largely within the discretion of the trial court. Johnson v. Cunningham, 104 Ill App2d 406, 244 NE2d 205 and Dispenza v. Picha, 98 Ill App2d 110, 113, 240 NE2d 325.

219

■ Plaintiff contends that the cross-examination permitted the introduction of defendant's self-serving statement that he "stopped as soon as he could." In Dispenza, supra, the court in discussing the identical allegation of error said at page 113:

> "When the deputy answered the question in the affirmative and admitted that the defendant at the scene had said the plaintiff's car had pulled in front of him, despite the self-serving nature of the defendant's statements, they were admissible as part of the transaction inquired into by the plaintiff."

■ Defendant's recitation in the case at bar that he went with the police to the police station following the accident could very well have redounded to his detriment, strongly suggesting that he had been arrested or served with citations charging violations of traffic laws. As to the statement that he offered to take plaintiff to the hospital, we do not find this to be of such magnitude as to amount to error.

Plaintiff's photographs of the scene were admitted into evidence. These photographs were taken approximately three years after the occurrence and depicted the scene at night. There was a dispute and conflict among witnesses as to whether these photographs truly portrayed the lighting conditions and visibility as it existed on the evening of the accident.

Defendant called a professional photographer, whose qualifications were apparently conceded, and he in substance related that photographs that are taken at a scene at night are secured by using a time exposure. A "time exposure" is allowing enough light to penetrate through the camera, to register on the film over a given period of time. The person taking the photograph has control over how much or how little light appears in the final print. This can be controlled in

several ways, by exposure, by the type of film, by the print and printing exposure and the type of paper used in printing. The witness testified that he could not discern by looking at the photographs in evidence if any of the foregoing techniques were utilized in the creation of these exhibits, without having been present at the time the photographs were taken to observe the scene with his naked eye in order to tell whether there was more or less light in the photographs than there should have been.

At the post trial motion hearing the trial court said:

"I also felt about the photographer, the photographer's statement, as I remember, was general and did not impeach the photographs the plaintiff had."

Plaintiff contends that defendant laid a basis for impeachment and failed to "follow up" and cites Schoolfield v. Witkowski, 54 Ill App2d 111, 203 NE2d 460, and related cases for the proposition that such procedure and conduct is prejudicial and unfair.

However, defendant's expert witness was adducing substantive expert opinion evidence and not merely a basis for impeaching evidence. True, it was offered to affect the credibility of the photographs, as was the testimony of witnesses who testified that the photographs were not an accurate portrayal of what they purported to portray regarding lighting conditions and illumination of the scene. But, to be admissible it was not necessary that this witness, or another, testify that the pictures were not accurate photographically.

■ We find no error in the admission of this testimony.

Plaintiff contends that it was improper for defendant to comment upon the absence of Craig Benjamin as a witness.

Plaintiff's answers to defendant's interrogatories advised that Benjamin would be a witness. Plaintiff did

not call upon Benjamin to testify, but on plaintiff's direct examination he was asked, after plaintiff's testimony revealed that Benjamin was with him at the time of the accident, the following:

Plaintiff's counsel: "Incidentally, Craig still is living in Chicago Heights, or is he somewhere else?"

Plaintiff responded: "His parents moved to Ohio, I believe."

It is obvious that plaintiff and his counsel sought to suggest to the jury that Benjamin's absence from the trial and unavailability were attributable to his change of residence.

The colloquy that gives rise to the contention under this point occurred during defendant's argument when the following transpired:

Defendant's counsel: "I think, really, that in this case, it would have been an awfully lot more helpful if the plaintiff would have given us Craig Benjamin and his testimony—."

Plaintiff's counsel: "Just a moment."

Defendant's counsel: "—other than a lot of experts."

Plaintiff's counsel: "This is objected to. You had an opportunity to take his deposition and you had."

Defendant's counsel: "Sir, you know very well that I didn't know Craig Benjamin was leaving for California and you did."

Plaintiff's counsel: "You could have taken his evidence deposition when you took his Discovery Deposition."

The Court: "Don't get into an argument. I will sustain the objection."

Plaintiff's counsel: "Thank you."

Defense counsel continued his argument with "Nobody told us why Craig Benjamin was not hit. . . ."

Plaintiff and Benjamin were friends and this suggests a likelihood that he would be biased against defendant within the meaning of United States v. Beekman, 155 F2d 580. Plaintiff failed to explain or offer any reasonable excuse for his failure to call him as a witness, except to testify that Craig Benjamin's parents moved to Ohio and thus generating a suggestion that perhaps he accompanied them in a change of residence.

In Stone v. Warehouse & Terminal Cartage Co., 6 Ill App2d 229, 127 NE2d 260, at page 233, the court quoted from McCormick on Evidence, § 249 as follows:

"When it would be natural under the circumstances for a party to call a particular witness . . . his adversary may use this failure as the basis for invoking an adverse inference. . . .

"Most of the controversy arises in respect to the failure to call a witness. It is generally agreed that when a potential witness is available, and appears to have special information relevant to the case, so that his testimony would not merely be cumulative, and where his relationship with one of the parties is such that the witness would ordinarily be expected to favor him, then if such party does not produce his testimony, the inference arises that it would have been unfavorable.

"It is often said that if the witness is 'equally accessible' to both parties, no inference springs from the failure of either to call him. This can hardly be accurate, as the inference is frequently allowed when the witness could easily be called or subpenaed by either party. What is probably meant is that when so far as appears, the witness would be as likely to be favorable to one party as the other, there will be no inference. But even here, it seems

223

that equality of favor is nearly always debatable, and that though the judge thinks the witness would be as likely to favor one party as the other, he should permit either party to argue the inference against the adversary. At least, it would appear in this supposed case of 'equal favor', if the witness's knowledge is directed toward a particular issue, that then the argument should be available against the party who has the burden of persuasion on that issue."

We hold that there was no serious prejudice in defendant's commenting upon the failure of plaintiff to produce Craig Benjamin, particularly in light of plaintiff's prior attempted explanation of his absence. In any event, such prejudice as there might have been does not require reversal in this case. See Mitchell v. Four-States Machinery Co., 74 Ill App2d 59, 82, 220 NE2d 109.

The standard to be applied in reviewing the trial court's judgment is whether the verdict was contrary to the preponderance of the evidence rather than whether the verdict was contrary to the manifest weight of the evidence. The manifest weight of the evidence standard prevails in a court of review when a jury's verdict is approved by the trial judge, not when it has met with his disapproval. Skiba v. Ruby, 113 Ill App 2d 170, 251 NE2d 771.

In passing on a motion for a new trial the trial court has a greater latitude in passing on questions of fact than on questions of law, and we will not reverse its ruling on a question of fact unless a clear abuse of discretion is shown. Hulke v. International Mfg. Co., 14 Ill App2d 5, 142 NE2d 717. However, this discretion is not unlimited and must be reasonably exercised, and the trial court cannot interfere with the jury's verdict unless it can say that it is contrary to the preponder-

ance or weight of the evidence, though the court might have decided differently. Jonkman v. Singletary, 10 Ill App2d 335, 134 NE2d 671. In Finley v. New York Cent. R. Co., 19 Ill2d 428, 167 NE2d 212, at page 436:

> "The fact that contrary inferences would be equally supported by the evidence is not sufficient to show unreasonableness of the verdict. It is the jury's function to weigh contradictory evidence, judge the credibility of the witnesses and draw the ultimate conclusion as to the facts. Its conclusion, whether relating to negligence, causation, or any other factual matter should not be set aside merely because different conclusions could be drawn or because judges feel that other results are more reasonable."

Plaintiff's testimony revealed that he was walking on the shoulder of the road. He testified that he did not see the lights of defendant's vehicle as it approached, but that as he came to the Ranch House driveway he was struck. Defendant testified that his headlights were functioning and projected light 20 to 40 car lengths or 340 to 680 feet ahead of his vehicle, and he observed plaintiff running north to south across the westbound lane approximately 20 to 25 feet ahead of defendant's vehicle. Defendant applied his brakes, but struck plaintiff with the right front of the vehicle. Defendant's wife testified, as did defendant, that just before the impact, an eastbound vehicle was approaching, and the wife testified that she was looking straight ahead and observed a figure in front of the approaching eastbound vehicle, another figure in front of defendant's vehicle and a third figure on the shoulder of the road. Her testimony established that two figures were on the roadway and the third on the shoulder, and the figure she saw in front of her husband's vehicle was plaintiff.

225

The jury could infer that the two or three persons Frank Opsahl observed "running or trotting" west on the north side of the road were plaintiff and his friends. In view of the severe weather, the jury could also reasonably believe that these young men were trotting or running and not walking along Joe Orr Road.

Plaintiff contends that the record reflects that the scene was well lit and defendant's headlights were more than adequate to furnish sufficient illumination of the road for defendant to have seen plaintiff. The same contention is applicable to plaintiff in regard to observing defendant's vehicle.

Defendant, his wife and Phillip Piazza, plaintiff's witness, all testified that defendant's vehicle was always on the pavement of the westbound lane.

The jury was confronted with conflicting evidence whether plaintiff was walking on the road or on the shoulder of the road, and of necessity defendant would have had to drive off the road to have struck plaintiff. The jury accepted the version that plaintiff was on the pavement when defendant's vehicle came upon him. The jury received an instruction (IPI No. 70.03) pertaining to a pedestrian's duty when crossing a roadway at any point other than within a marked crosswalk. It stated that under that circumstance the pedestrian "shall yield the right-of-way to all vehicles upon the roadway." IPI No. 60.01 was also given, delineating the duties of a motorist toward pedestrians crossing a roadway, under the pertinent statute.

There was no evidence of excess speed, but plaintiff relies primarily upon the alleged failure of defendant to keep a proper lookout for pedestrians under lighting conditions that were more than adequate to have afforded defendant ample illumination to have seen plaintiff and avoided striking him. Plaintiff presented a

radiology specialist who testified that in his opinion plaintiff was initially struck on the left leg, slightly to the front, which caused the limb to collapse and then be driven against the inside of the right leg which, in turn, collapsed. The police officer testified that defendant told him that plaintiff was crossing the road and that defendant just before the impact was looking to his left and right.

Dailey v. Hill, 99 Ill App2d 474, 241 NE2d 683, at page 479, this court said:

> "Defendant was entitled to have these questions of fact decided by the jury, and it is irrelevant that the judge might have decided the case differently, based on his own evaluation of the testimony. Determination of the weight to be accorded conflicting testimony, the drawing of inferences from the evidence, and resolving issues of fact such as negligence are preeminently matters for the jury and not for the judge. In the proper exercise of his discretion a judge may not set aside a verdict and grant a new trial unless it is clear that the verdict resulted from passion or prejudice or is wholly unwarranted by the evidence."

Litigation always presents plaintiff's version and defendant's version and the jury is burdened with the task of discerning what actually transpired. In the case at bar the jury could find that plaintiff was on the road and failed to exercise due care for his own safety in failing to see the lights of defendant's car moving toward him.

■■ ■■ We find that the verdict is supported by the preponderance of the evidence and that the trial court erred in granting a new trial. We also find that the court properly denied plaintiff's motion for judgment

notwithstanding the verdict on the issue of liability. This cause is reversed and remanded to the Circuit Court with directions to enter judgment on the verdict.

Reversed and remanded with directions.

DRUCKER and ENGLISH, JJ., concur.

