ANN SIMON, Plaintiff-Appellant, *v.* ROBERT PLOTKIN *et al.*, Defendants-Appellees.

First District (1st Division)    No. 62691

Opinion filed July 5, 1977.

David Chaimovitz, of Chicago, for appellant.

Joseph J. LaRocco, Wilson Frost, and Lord, Bissell & Brook, all of Chicago (Robert Knuti, of counsel), for appellees.

Mr. JUSTICE BUA delivered the opinion of the court:

Ann Simon, hereafter plaintiff, filed an action in the Circuit Court of Cook County, chancery division, to reform two land trusts and for certain other relief. On February 28, 1975, the court entered judgment in favor of the defendants. Thereafter, on May 13, 1975, the court denied plaintiff's motion to vacate its judgment order and for leave to file an amended complaint to conform to the proof. Plaintiff now appeals contending that the court erred (1) in disqualifying her as an incompetent witness under the Dead Man's Act (Ill. Rev. Stat. 1973, ch. 51, par. 2); (2) in rejecting certain testimony as hearsay; and (3) in denying her motion for leave to file an amended complaint to conform to the proof (Ill. Rev. Stat. 1973, ch. 110, par. 46(3)). The relevant facts follow.

Plaintiff's father, Harry Plotkin, died testate on May 18, 1970. By his will executed September 17, 1969, Harry bequeathed one half of his estate to plaintiff and one half to his son, Robert Plotkin. On the same day he executed his will Harry conveyed title to property located at 3650 North Pine Grove, Chicago (Pine Grove), to the La Salle National Bank under Trust No. 38181. Harry designated himself as beneficiary and Robert as successor beneficiary. If Robert predeceased Harry, the beneficial interest passed to the plaintiff.

At the time of his death, Harry also held a beneficial interest in property located at 24 South Halsted, Chicago (Halsted), under La Salle National Bank Trust No. 34208, dated October 13, 1965. Under the Halsted trust, upon Harry's death his interest passed to the plaintiff, Robert, and a third brother, Phil Plotkin, in equal shares. Phil died on April 18, 1968. On April

22, 1968, Harry amended the Halsted trust agreement naming Robert as successor beneficiary if he survived.

Robert was named executor of his father's estate. The will was probated in the Circuit Court of Cook County. No question is raised herein concerning the propriety of those proceedings.

In April 1971 plaintiff filed her complaint as aforesaid charging Robert with fraud in the execution of the two land trusts. La Salle Bank, as trustee, and Mid-City Bank, as a lessee of the Halsted property, were joined as defendants. Plaintiff's complaint prayed for reformation of the land trusts, appointment of a receiver, and an accounting for rents.

At trial, Irving Abrams, Esq., testified that he knew Harry Plotkin for 35 years and that during that time he acted as Harry's attorney. He testified that he prepared both Harry's will, executed as aforesaid, and the Pine Grove trust agreement. He stated that all documents were prepared and executed in accord with Harry's instructions. He further recalled drafting and mailing a letter to all Harry's immediate heirs relating to the Pine Grove property. The letter recited Harry's desire to consolidate title in his name and contained an offer to pay each party $6,500 in return for a quitclaim deed thereto.

The plaintiff called Robert Plotkin to testify under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 60). He testified that his father lived in an apartment at the Pine Grove address until his death, that the Pine Grove property was a six-flat apartment building, and that the plaintiff also resided there. He stated that, until Harry died, he did not know the extent of his father's holdings, other than the Pine Grove and Halsted properties and that he was not a deputy on any bank account his father had. However, he did say that about a year before his father died he was named a co-signer on Harry's checking account. This was the time Harry was being hospitalized more and more frequently. Robert said that, in reference to the Pine Grove and Halsted properties, he did not negotiate any matters for his father during Harry's lifetime, and that he did not know he was the successor beneficiary to both properties until after Harry's death. He said he was familiar with the letter from Irving Abrams relating to the Pine Grove property and that he had received $6,500 in return for his quitclaim deed thereto. He could not, however, recall any instance during his father's lifetime where he discussed his acquiring title to the Pine Grove or Halsted properties.

Mr. James Coconas testified that he owned property adjacent to Harry's Pine Grove building on the north. In September 1968 he contacted Robert Plotkin and indicated his interest in purchasing the Pine Grove property on behalf of himself and his partner, James Atsaves. He said that he, Robert, and Irving Abrams met several times to discuss the

purchase of the property and that these meetings all occurred before Harry's death. He recalled submitting an unsigned written offer to purchase to Abrams.

Stanley Feinberg, Esq., testified that in October 1968 the plaintiff contacted him in regards to selling her interest in the Pine Grove property. After reading plaintiff's copy of the Abrams letter, as hereinbefore described, and discussing the transaction with Abrams, he explained to his client her father's apparent wish to consolidate the title in his name. He recommended she speak to her father before tendering her quit claim deed. He said she refused and indicated her desire to accede to her father's wishes. He then recommended that she obtain a lease for her apartment as a condition of sale. This plaintiff did. Subsequent to Harry's death plaintiff retained Feinberg to inquire into the inventory of her father's estate which he did. He stated that he had taken no part in the probate proceedings of Harry's estate.

Plaintiff also called Seymour Persky, Esq., to the stand. He stated that prior to the death of Harry he had had several conversations with Robert Plotkin and Irving Abrams concerning his desire to purchase the Pine Grove property. He owned property adjacent to Plotkin's on the south. He testified that during the course of these conversations Robert informed him that he was the successor beneficiary to the Pine Grove property. On cross-examination he stated that his deal with Robert was never consummated.

During the direct examination of Mr. Persky, plaintiff's counsel sought repeatedly to elicit testimony as to conversations between the witness and Harry Plotkin. The court sustained defendant's objections in several instances where the conversations were offered to show the truth of what was said. Where the testimony was offered for the purpose of showing that the conversations had merely taken place, it was admitted.

Finally, plaintiff took the stand. The defendants objected to her testifying on grounds that to do so would be violative of the Dead Man's Act (Ill. Rev. Stat. 1973, ch. 51, par. 2). The court sustained the objections whereupon the following colloquy between plaintiff's counsel and the court ensued:

> "Mr. Chaimovitz [plaintiff's counsel]: If the Court please, for the record, all I want to elicit from the plaintiff was testimony relating to her relationship with her father, not with reference to this transaction.
>
> The Court: He has objected, and I sustain the objection."

Thereafter, the plaintiff rested.

The defendants then presented evidence from several bank officers as to the authenticity of the trust documents.

Subsequently, on February 28, 1975, the court denied plaintiff's motion

for leave to file an amended complaint as aforesaid and entered judgment in favor of the defendants.

■■ Plaintiff initially ascribes error to the court's refusing to allow her to testify under the Dead Man's Act. The principal purpose of the Dead Man's Act (Ill. Rev. Stat. 1973, ch. 51, par. 2) is protection of decedents' estates from fraudulent claims. (*Fredrich v. Wolf* (1943), 383 Ill. 638, 50 N.E.2d 755; *In re Estate of Colewell* (1972), 9 Ill. App. 3d 247, 292 N.E.2d 96.) To insure this protection, the Act prohibits a party to a civil action, suit, or proceeding (or a person directly interested) from testifying on his own motion or in his own behalf when the adverse party sues or defends as an executor, administrator, heir, legatee or devisee. (*Brownlie v. Brownlie* (1932), 351 Ill. 72, 183 N.E. 613; *Mortimer v. Mortimer* (1972), 6 Ill. App. 3d 217, 285 N.E.2d 542.) However, in view of the record before us we need not reach the merits of this question.

■■ An offer of proof is necessary to preserve a question for review where, as here, the trial court refuses to allow the testimony of a witness as to a certain matter or at all. (*Kleinhaus v. Ohde* (1953), 350 Ill. App. 177, 112 N.E.2d 498; *Ragen v. Bennigsen* (1956), 10 Ill. App. 2d 356, 135 N.E.2d 128; *Dirksmeyer v. Barnes* (1954), 2 Ill. App. 2d 496, 119 N.E.2d 813.) An offer of proof must be made in a proper manner, and show what the offered proof is, or what the expected testimony will be, by whom or how it was made, and what its purpose is. (See generally *Asher v. Stromberg* (1966), 78 Ill. App. 2d 267, 223 N.E.2d 300; *Moren v. Samuel M. Langston Co.* (1968), 96 Ill. App. 2d 133, 237 N.E.2d 759; *Pioneer Hi-Bred Corn Co. of Illinois v. Northern Illinois Gas Co.* (1975), 61 Ill. 2d 6, 329 N.E.2d 228.) After carefully scrutinizing the record before us we note the absence of a proper offer of proof as hereinbefore outlined. When plaintiff's testimony was refused, the record evinces that counsel merely made a general statement of his desire to elicit testimony from the witness, without the requisite specificity of a proper offer of proof. Therefore, we hold that the question of plaintiff's competency to testify was not properly preserved for review and has been waived.

■■ Next plaintiff contends that it was error for the court to sustain objections to certain portions of witness Persky's testimony as hearsay. Specifically, plaintiff sought to elicit testimony from the witness concerning conversations between him and the decedent, Harry Plotkin. When queried by the court, following an objection by the defendant, counsel admitted that he was offering the testimony for the purpose of proving the truth of what was said by the decedent. Thus, by counsel's own admission the testimony was hearsay. An out-of-court declaration offered as proof of the matter asserted therein is hearsay and is inadmissible. *Goshey v. Dunlap* (1973), 16 Ill. App. 3d 29, 305 N.E.2d 648; *Kubisz v. Johnson* (1975), 29 Ill. App. 3d 381, 329 N.E.2d 815.

■■ Finally, plaintiff contends that the court erred in denying her leave to file an amended complaint to conform to the proof. The allowance of amendment to pleadings prior to the entry of final judgment rests within the sound discretion of the trial court, and its decision will not be regarded as prejudicial error unless there has been a manifest abuse of such discretion. (*Mundt v. Ragnar Benson, Inc.* (1975), 61 Ill. 2d 151, 335 N.E.2d 10.) Considering the circumstances of the motion, and the fact that even on the amended complaint there was no evidence of record to support the allegations or theory therein contained, it cannot be said that the court manifestly abused its discretion in denying it.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.