HELENA M. BUCZYNA, Indiv. and as Special Adm'r of the Estate of Stanislaw Buczyna, Deceased, Plaintiff-Appellee, v. CUOMO & SON CARTAGE COMPANY *et al.,* Defendants-Appellants (Val Haines, Indiv. and d/b/a Silver Jug, *et al.,* Defendants).

First District (1st Division)   No. 84—2152

Opinion filed July 21, 1986.

Judge & Knight, Ltd., of Park Ridge, and Baker & McKenzie, of Chicago (Jay S. Judge, Thomas C. Leavy, and Francis D. Morrissey, of counsel), for appellants.

Paul B. Episcope, of Paul B. Episcope, Ltd., and Michael B. Nash, of Nash & Nash, both of Chicago, and Edward J. Kionka, of Winters & Garrison, of Marion, for appellees.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

On November 2, 1979, Stanislaw Buczyna was killed when the automobile he was driving collided head-on with a truck owned by Cuomo & Son Cartage Company (Cuomo) and driven by its employee, Tomas Arias (Arias). The plaintiff, Helena Buczyna, brought this action individually, and as special administrator of the estate of Stanislaw Buczyna, and as the mother and next friend of Stanislaw's minor children seeking damages under both the Wrongful Death Act (Ill. Rev. Stat. 1983, ch. 70, pars. 1, 2), and the Dramshop Act (Ill. Rev. Stat. 1983, ch. 43, pars. 94 through 195). The wrongful-death claim named Cuomo and Arias as defendants; and the dramshop claim named a tavern, Silver Jug, Inc., and the owner, Val Haines, as defendants. Prior to trial, the court denied the defendants' motion to sever the two claims and the defendants' motion *in limine* to exclude evidence of Arias' drinking on the day of the accident. At the conclusion of the trial, the jury returned a $1.5 million verdict in favor of the plaintiff on the wrongful-death claim, but found in favor of the defendants on the dramshop claim. Defendants' post-trial motion was denied, and they now bring this appeal.

Defendants, Cuomo and Arias, raise numerous contentions in this appeal arguing that the judgment of the circuit court should be reversed in its entirety, that the judgment should be reversed and remanded for a new trial, or that award of damages should be vacated or reversed as grossly excessive. Among their contentions are the following: (1) the defendant, Tomas Arias, was not incompetent to testify under the Dead Man's Act (Ill. Rev. Stat. 1983, ch. 110, par. 8—201); (2) the jury should have been instructed on the issue of plaintiff's contributory negligence; (3) the evidence of Arias' drinking on the night of the accident should not have been admitted because there was no proper evidence of intoxication; (4) the eyewitness' testimony of Thomas Marrs was inherently unreliable and should be stricken; (5) the trial court should have directed a verdict in favor of the defendants on the issue of whether Arias was acting within the scope of his employment; and (6) the verdict was excessive and should be set aside or alternatively should have been reduced.

On the day of the accident, Tomas Arias and Vito Cuomo claimed they had been in Wisconsin where they had delivered a pool table to Vito's vacation home. When they returned to the defendant cartage company in Lemont, Illinois, Vito directed Arias to clean the premises and then to meet him at the Silver Jug. The Silver Jug tavern was located next to the cartage company. According to Arias' testimony,

Arias arrived at the Silver Jug tavern shortly before 9 p.m., where he drank beer and played pool. It is unclear as to the number of beers Arias consumed before he left the tavern, but he admitted to having at least three. Veldia and Debra Gaines, who tended bar at the Silver Jug on the evening of the accident, testified that Arias had three beers. However, their stories conflicted as to the number of beers that each served to Arias. There was evidence that the defendant had, in fact, arrived at the tavern earlier than he had claimed in his testimony.

Also in his testimony, Arias said he left the Silver Jug around 11 p.m. and walked to the cartage company yard to pick up one of Cuomo's trucks. He stated he took the truck that evening because he had to pick up some parts for his employer the following morning. Vito Cuomo admitted that Arias was to pick up some materials the next day and took the truck for that purpose. Arias left the company yard with the truck and Carl Durkin, a friend from the Silver Jug to whom he was giving a ride, and proceeded northbound on Lemont Road.

Thomas Marrs testified on behalf of the plaintiff. He stated that he was driving a vehicle on Bluff Road waiting to turn north onto Lemont Road when Arias drove past. A blue automobile followed Arias at a close distance, and Marrs waited for it to pass before he proceeded onto Lemont Road. Marrs said that he maintained a two-car-length distance from the blue vehicle and the defendant's truck moved progressively further away.

At this point, Lemont Road was a two-lane highway, and it had an uphill grade which leveled out near the scene of the accident. The defendant's truck was about two blocks ahead of Marrs when it reached the level portion of the road. Marrs stated that the defendant's truck swerved to the left just prior to the collision. He saw one headlight from Buczyna's oncoming vehicle, and observed the taillights of the truck rotate in a clockwise fashion and slide off towards the right.

The other occurrence witness, Roger Beck, testified that he had approached the two vehicles from the northbound lane and saw the headlights of Cuomo's truck move from horizontal to vertical. However, he said he was too far away to see where the center lines were at the point of the collision and could not tell if the vehicles were in their proper lanes. Douglas Miller, an evidence technician with the Du Page County sheriff's police, testified that when he arrived at the scene of the accident, which was at approximately 11:40 p.m., Buczyna's car was in the southbound lane facing east. He said that the

front wheels of the Buczyna vehicle were inches from the center line and that the vast majority of debris was in the southbound lane. Miller observed no skid marks at the scene, nor any gouge or scrape marks.

The plaintiff also called three members of the Lemont fire department, April Stech, Michael Smollen and Richard Lee, who treated Arias and transported him to the hospital. April Stech testified that when she arrived at the scene Arias was flailing his arms and shouting that he did not want to be touched. She noticed that, as Arias spoke, his voice would start out very loud and would just drop off. She said that Arias smelled like beer, and that it was her opinion that Arias was intoxicated. She admitted that she could not be 100% certain that Arias was intoxicated, and that the symptoms could be indicative of a head injury. On redirect, she testified that his pupil reactivity indicated that if he had a head injury it was not severe.

Paramedic Michael Smollen testified that Arias was very unruly while being transported to the hospital. He stated that Arias would yell and then suddenly his voice would drop and become very soft. He detected the smell of alcohol, and it was his opinion that Arias was drunk. Smollen based his opinion on three factors: (1) the odor of alcohol; (2) the way Arias was acting; and (3) the way he was talking. Smollen admitted that it was equally possible that Arias could have been reacting to a head injury, but he did not believe that Arias was suffering from a head injury.

Richard Lee also gave his opinion that Arias was intoxicated. Lee admitted on cross-examination that the smell of alcohol and unruly conduct do not necessarily mean an individual is intoxicated; his statement that Arias was intoxicated, he stated, was "just a guess." However, Lee later explained that by use of the word guess, he meant that it was his opinion that Arias was intoxicated.

The plaintiff also called Keith Larsen to testify. Larsen was a deputy sheriff with the Du Page County sheriff's police department, and had been dispatched to the scene on the night of the accident. He testified primarily regarding the procedures he followed in the investigation and what he had observed at the scene. Additionally, Larsen testified about his observations while questioning Arias at the hospital approximately 90 minutes after the accident. In his testimony, Larsen stated that he did not think Arias was intoxicated but that he had made inconsistent statements.

Dr. Bruce Johnson, a doctor who treated Arias at Good Samaritan Hospital, testified that he had no independent recollection of Arias' treatment or condition, but there was nothing in the hospital or medi-

cal records that indicated that Arias was disorientated or intoxicated.

The defendants initially contend that the testimony of Deputy Larsen at the trial removed any bar imposed by the Dead Man's Act (Ill. Rev. Stat. 1983, ch. 110, par. 8—201), which prevented Arias from testifying concerning the accident. They claim that certain facts about the accident were elicited during plaintiff's examination of Larsen regarding Larsen's observations made during his conversation with Arias at the hospital and that this removed the bar of the statute. However, the plaintiff, on the other hand, claims that Larsen's testimony did not elicit facts and circumstances of the accident; rather, she asserts Larsen's testimony was merely intended to show and did show Arias to be in a confused and disorientated state of mind, and was evidence of his intoxicated state.

During direct examination, Larsen testified that Arias answered his questions inconsistently. Larsen stated that Arias was confused. However, when defense counsel inquired into the specific matters of confusion on cross-examination, Larsen stated that Arias was confused only about the use of the words "turn" and "pull"; the plaintiff attempted to rehabilitate the witness on redirect by drawing his attention to his prior statement which indicated confusion about additional matters. When plaintiff's counsel attempted to direct the witness' attention to his prior statement, the following exchange took place.

> "[PLAINTIFF'S COUNSEL]: There was something a little more confusing than the words turned and pulled in the hospital when you talked to Mr. Arias, wasn't there?
>
> [LARSEN]: I don't believe so.
>
> [PLAINTIFF'S COUNSEL]: Well, didn't he at first say something different referring to—
>
> [LARSEN]: What page are you on?
>
> [PLAINTIFF'S COUNSEL]: I am sorry, 5.
>
> [LARSEN]: 5?
>
> [PLAINTIFF'S COUNSEL]: Yes.
>
> [LARSEN]: Okay.
>
> [PLAINTIFF'S COUNSEL]: Could you read that to yourself?
>
> Again, we cannot talk about what Mr. Arias said specifically. What I would like to know is whether or not there was something that he was saying that you just couldn't understand that was sort of confusing.
>
> [LARSEN]: Again, I would have to go back to the same thing. It would be the two words that I was confused on.

[PLAINTIFF'S COUNSEL]: That's all?

[LARSEN]: Yes.

[PLAINTIFF'S COUNSEL]: Do you remember saying the driver insisted that he never hit him which I couldn't understand?

[LARSEN]: Yes."

The defendants claim that this later question and answer constituted a waiver of the Dead Man's Act since it related to the event in question here. They contend that the court should have allowed Arias to be called as a witness and examined about the accident at that time, but the trial judge found no waiver of the Act.

■■ ■ After reviewing the record here, we find, contrary to defendants' claim, Deputy Larsen's testimony failed to remove Arias' incompetency to testify about the accident. Under the Dead Man's Act, the testimony of adverse parties and interested persons is disqualified only to the extent that it is testimony concerning a conversation with the deceased or of an event which took place in the presence of the deceased. (*In re Estate of Babcock* (1985), 105 Ill. 2d 267, 273, 473 N.E.2d 1316.) A waiver of the adverse or interested party's incompetency takes place to the extent that the representative of a deceased presents testimony of a witness concerning any conversation with the deceased or to any event which took place in the deceased's presence. (See Ill. Rev. Stat 1983, ch. 110, pars. 8—201, 8—201(a).) However, here Larsen did not testify about any event occurring in the deceased's presence, nor did he testify concerning any conversation with the deceased. He testified only about his observations made during a conversation with Arias, not the deceased, long after the occurrence and after Buczyna died. Also, our examination of the record discloses that the plaintiff's counsel did, as he contends, attempt to carefully tailor his questions in order to avoid bringing out any facts about the accident.

In support of their argument, the defendants cite *Logue v. Williams* (1969), 111 Ill. App. 2d 327, 250 N.E.2d 159, and *Crow v. Blaser* (1948), 335 Ill. App. 281, 81 N.E.2d 742. Both of these cases are distinguishable from the present case. In *Logue*, the plaintiff called a witness to testify about a conversation in which the defendant stated, " 'I have just hit a man, a boy or something, down the road and they are pinned under my car because I can hear them hollering.' " (*Logue v. Williams* (1969), 111 Ill. App. 2d 327, 337, 250 N.E.2d 159.) There, the defendant was permitted to testify as to the full conversation because, as the court stated, the plaintiff attempted to obtain all of the advantage of defendant's inculpatory statements to the exclusion of

the exculpatory statements contained in the same conversation.

The court in *Logue* also noted that it was not contested that a particular exception to the Dead Man's Act, in effect at that time, was applicable. This exception provided for a waiver of the Dead Man's Act where a witness testified to a conversation or admission by an adverse party occurring before the death and in the absence of the deceased party. In such circumstances, the adverse party was free to testify to the same admission or conversation. Of course, this exception is different from the statute in effect at the time of the trial here and at the present time. The present exception does not provide for a waiver merely in the case of testimony concerning a conversation with an adverse party but, as stated previously, requires that the testimony relate to a conversation with the deceased before a waiver. (See Ill. Rev. Stat. 1983, ch. 110, par. 8—201(a).) In the *Logue* case, the court found that the trial court did not exceed the bounds of the exception there by allowing the defendant to testify but specifically found that the exception had been properly applied in that case.

Furthermore, we agree with the plaintiff that the testimony in that case related to the actual facts of the accident and were offered for the purpose of establishing their truth as an admission. In this case, the testimony was not offered as an admission, nor do we find that the plaintiff was attempting to take advantage of any inculpatory statements contained in the conversation. Rather, as the plaintiff contends and as appears consistent with the record, the intention here was merely to impeach the witness pursuant to Supreme Court Rule 238(a) (87 Ill. 2d R. 238(a)). In fact, to the extent there can arguably be any reference to facts of the accident in the testimony here, they are exculpatory and not inculpatory.

In *Crow v. Blaser* (1948), 335 Ill. App. 281, 81 N.E.2d 742, the plaintiff called a State policeman to testify to what one of the defendants told him at the scene of the accident about how the accident happened. Over the plaintiff's objections, the defendant was subsequently allowed to detail the full conversation. The appellate court sustained the action of the trial court, and observed that the attorney for the plaintiff had, in fact, waived his objection there by stating, "Go ahead [let him testify]," after being warned by the court that the proposed testimony would open the door to the whole conversation. Also, the testimony of the officer concerning the conversation related there, unlike the testimony here, clearly to how the accident happened. Furthermore, the statute in question there, as in the *Logue* case, was also different from our present statute and specifically provided for the waiver of the Dead Man's Act on the basis of the testimony concern-

ing any conversation with an adverse party.

Additionally, the defendants have not properly preserved this question concerning the alleged waiver of the Dead Man's Act for appeal. They made no offer of proof concerning what Arias' testimony would have been had he been called as a witness, and, as the court in *Simon v. Plotkin* (1977), 50 Ill. App. 3d 603, 607, 365 N.E.2d 1022, stated, "An offer of proof is necessary to preserve a question for review where [under the Dead Man's Act], as here, the trial court refuses to allow the testimony of a witness as to a certain matter or at all. [Citations.] An offer of proof must be made in a proper manner, and show what the offered proof is, or what the expected testimony will be, by whom or how it was made, and what its purpose is. [Citations.]" The defendants made no such offer of proof as required in the *Simon* case, but merely argued to the trial court that the bar of the statute had been waived by Larsen's testimony. Accordingly, the question of Arias' competency to testify as argued now by the defendants has not been properly preserved for review.

However, the defendants also contend that the remainder of Larsen's prior statement should have been admitted, apparently through testimony by Arias, under the rule of completeness. That rule essentially provides that whenever a part of a statement has been admitted, in fairness, the remainder of the statement ought to be admitted and considered contemporaneously. (*Biel v. Wolff* (1970), 126 Ill. App. 2d 209, 261 N.E.2d 474; *Dispenza v. Picha* (1968), 98 Ill. App. 2d 110, 240 N.E.2d 325; *Star Service & Petroleum Co. v. Short* (1951), 344 Ill. App. 280, 100 N.E.2d 664. See E. Cleary & M. Graham, Illinois Evidence sec. 106.2 (4th ed.1984).) However, the principle of completeness does not give the adverse party an automatic right to introduce an omitted part of a statement, otherwise inadmissible, on the ground that the door has been opened by his opponent. (E. Cleary & M. Graham, Illinois Evidence sec. 106.2 (4th ed. 1984).) It is within the discretion of the trial court, whether in the interest of justice, to permit the introduction of an omitted part of a statement to explain or refute an alleged unfavorable inference. (*Biel v. Wolff* (1970), 126 Ill. App. 2d 209, 261 N.E.2d 474; E. Cleary & M. Graham, Illinois Evidence sec. 106.2 (4th ed. 1984).) In order for fairness to require the admission of the omitted portions of the statement, the trial court must conclude that it is necessary to either explain or modify the original statements. See *Pyse v. Byrd* (1983), 115 Ill. App. 3d 1003, 450 N.E.2d 1374.

The statement of Larsen introduced here was "the driver insisted that he never hit him which I couldn't understand." The omit-

ted portions of Larsen's statement, which included this statement was, "And I knew the doctor. She let me in when he [*sic*] was sewing him up, and the driver [Arias] insists that he never hit him [Buczyna] which I couldn't understand at the time, because he said he was trying to avoid the other car that had come into his lane." We agree with the plaintiff that the omitted portions of the statement did not tend to explain or modify Arias' statement that Arias had never hit Buczyna's car but rather merely may have helped to explain the reason for Deputy Larsen's confusion, which was unnecessary. The primary reason that defendant sought to introduce the missing portions of the statement was to establish Arias' claim that Buczyna's car came into his lane of traffic. Such evidence was at that time at least collateral to the testimony and clearly would have been testimony concerning the events of the accident. This is not consistent with the fairness purpose of the so-called rule of completeness (see 87 Ill. 2d R. 212(c)), but in our opinion, directly contrary to it. Hence, it would have been improper to admit the self-serving portion under the circumstances here. (*Pyse v. Byrd* (1983), 115 Ill. App. 3d 1003, 1007, 450 N.E.2d 1374.) In any event, the introduction of a portion of the statement surely did not warrant the admission of Arias' testimony concerning the details of the accident itself.

We also note, the defendant never objected on the ground of the principle of completeness but limited his objection to a claim that the Dead Man's Act had been waived by the introduction of the statement. An objection must specify the grounds for the objection and no other grounds than those stated will be considered on appeal. *Johns-Manville Products Corp. v. Industrial Com.* (1979), 78 Ill. 2d 171, 399 N.E.2d 606.

■ The defendants contend that they did also ask that the rest of the statement be admitted during their argument to the trial court that the bar to Arias' testimony had been waived by Deputy Larsen's testimony. However, we believe that a fair reading of the transcript clearly reflects that the defendants' argument was directed only to the waiver of the Dead Man's Act. The purpose of the requirement that a specific objection be made is to allow a court to properly consider and rule upon an objection or contention. Here, no such opportunity was presented to the trial court. Since the defendants failed to raise this specific objection, they have waived their right to raise it on appeal.

■ Next, the defendants contend that, in any event, the proscriptions of the Dead Man's Act were waived when Thomas Marrs, a nonparty eyewitness to the occurrence, testified. The defendants contend

that since Marrs testified regarding the events and circumstances leading up to the collision, and, specifically that the defendant's truck was not in the proper lane prior to impact, this testimony falls squarely within subsection (a) of the Dead Man's Act which rendered Arias competent to testify as to all matters relating to the accident. (Ill. Rev. Stat. 1983, ch. 110, par. 8—201(a).) Again, however, the difficulty with the defendants' contention now is that they never raised this matter in the trial court. The defendants made no objection or argument that the admission of Marrs' testimony waived the Act and rendered Arias competent to testify.

At the outset of the trial in this case, the plaintiff called Arias to testify as an adverse witness pursuant to section 2—1102 of the Code of Civil Procedure. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1102.) Since any incompetency under the Dead Man's Act would be removed as to matters that the adverse witness was interrogated (see *In re Estate of Deskins* (1984), 128 Ill. App. 3d 942, 953, 471 N.E.2d 1018), the parties, in order to avoid this issue, stipulated that the plaintiff could examine Arias about the events of the night of the accident up to the time he reached the intersection of Lemont and Bluff roads without the plaintiff waiving protection under the Act.

Thereafter, the plaintiff called Thomas Marrs who testified about matters north of that intersection. This is the evidence which defendants now claim opened the door for Arias to testify about the accident. However, neither the plaintiff nor the defendants recognized this possible waiver of the Act during the trial. There was no objection or motion with respect to Marrs' testimony during the trial, and the first attempt to raise this issue was in defendants' post-trial motion.

Also, the defendants never offered Arias' accident testimony to the court at all. Under the circumstances, the defendants should have offered Arias as a witness concerning the matters north of the intersection, and made an offer of proof, as described above, when the trial court sustained the plaintiff's objection to such testimony. Arias was never called as a witness in relation to Marrs' testimony, nor, as previously stated, was he called as a witness in relation to Larsen's testimony and, without an offer of proof and a specific objection raising this issue, the issue is waived and will not be considered on appeal. See *Johns-Manville Products Corp. v. Industrial Com.* (1979), 78 Ill. 2d 171, 399 N.E.2d 606; *Gabrenas v. R. D. Werner Co.* (1983), 116 Ill. App. 3d 276, 451 N.E.2d 1307; *Simon v. Plotkin* (1977), 50 Ill. App. 3d 603, 365 N.E.2d 1022; *Coleman v. Dent* (1967), 86 Ill. App. 2d 335, 229 N.E.2d 911.

■ The defendants next urge that the trial court erred when it refused to instruct the jury on the issue of comparative negligence. The trial court refused defendants' tendered instruction on the basis that it found no evidence introduced which showed that the decedent was negligent in any way. However, the defendants contend that there was overwhelming physical evidence that the decedent had crossed over the center line. Also, the defendants assert that, in any event, the plaintiff failed to introduce any evidence that the decedent had met his duty of ordinary care, and thus, a ruling on the comparative-negligence issue in favor of the plaintiff was unwarranted. This the defendants said occurred by the failure of the court to give an instruction on the issue, which they claimed was tantamount to a directed verdict on the issue for the plaintiff.

Whether the refusal by the trial court to give defendants' proferred instruction had the effect of a directed verdict is not important under the circumstances of this case. Here, the evidence which the defendants assert is proof the decedent crossed the center line is specious at best, *i.e.,* the close proximity of the decedent's vehicle's front end to the center line, the fact that Buczyna's front wheels were turned slightly to the left, and the location of the oil from the decedent's car on the center line. This claimed evidence of plaintiff's negligence is highly speculative and conjectural and offers no reasonable basis for a jury to infer that Buczyna was negligent. A jury verdict cannot be based on conjecture or surmise and, accordingly, the trial court did not err in refusing the defendants' instruction on contributory negligence. *Johnson v. Colley* (1984), 128 Ill. App. 3d 849, 471 N.E.2d 587.

■ Furthermore, as the supreme court in *Casey v. Baseden* (1986), 111 Ill. 2d 341, 490 N.E.2d 4, recently held, it is the defendant's burden under the standard of comparative negligence as adopted in Illinois to plead and prove a plaintiff's negligence. Here, the defendants did not introduce any affirmative evidence of the plaintiff's negligence and, accordingly, were not entitled to an instruction on this issue.

■ The defendants contend that substantial prejudice resulted when the trial court permitted the plaintiff to introduce evidence that Arias was drinking on the night of the accident without sufficient evidence of intoxication. Evidence of drinking is admissible in a dramshop action, but because evidence of drinking is extremely prejudicial, a party in a negligence action must be able to show intoxication before the evidence of drinking will be admitted. *Sandburg-Schiller v. Rosello* (1983), 119 Ill. App. 3d 318, 331, 456 N.E.2d 192.

The defendants made three attempts to exclude the evidence of drinking from the trial here. First, the defendants made a pretrial motion to sever the dramshop and wrongful-death claims pursuant to section 2—1006 of the Code of Civil Procedure. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1006.) Second, the defendants made a motion *in limine* to exclude evidence of drinking asserting that there was no evidence of intoxication. The trial court denied both of these pretrial motions, and later the defendants made a third unsuccessful attempt and moved to strike the testimony of each paramedic who testified and opined that Arias was intoxicated on the night of the accident. The defendants claimed that the testimony of the paramedics was based on guess, conjecture and speculation and, thus, should not have been admitted.

■■ The defendants' initial contention is that the court should have granted its motion to sever the dramshop action because this improperly allowed evidence of the defendant Arias' drinking to be introduced when it normally would not have been allowed. However, the granting of a motion to sever is within the discretion of the trial court, and the trial court's determination will not be reversed unless such discretion is manifestly abused. (*Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 366 N.E.2d 327.) In denying defendants' motion to sever the two claims, the court specifically referred to the fact that it had received assurances from plaintiff's counsel that he would be able to introduce evidence of intoxication. In fact, the court vowed to take affirmative action against the plaintiff if no such evidence materialized at trial. Under the circumstances here, we do not find an abuse of discretion because the court did conditionally deny the motion on this assurance by plaintiff's counsel, and there was, in fact, as the following discussions indicate, subsequently, sufficient evidence of intoxication introduced to allow the evidence of drinking to be admissible in the negligence case itself regardless of whether there was a dramshop claim. Additionally, of course, the defendants' assertion regarding the denial of the motion *in limine,* therefore, must also fail for the same reasons. We further note, however, that at the time the court denied this motion there did exist sufficient evidence of intoxication even apart from the subsequent testimony of intoxication to deny the motion *in limine* at that time, especially in light of plaintiff's attorney's representation.

The plaintiff, as stated previously, subsequently introduced the testimony of three paramedics who were at the scene on the night of the accident and who observed the defendant Arias. All three gave their opinions, based on Arias' conduct, that Arias was intoxicated.

The defendants claim that this testimony was merely guess, conjecture or speculation on the part of the paramedics because they all indicated in response to the defendants' inquiries on cross-examination, that Arias' actions could have been caused by his injuries and not because of intoxication. On the other hand, the plaintiff argues and we agree, that while the paramedics admitted to the possibility that Arias' actions were a reaction to his injuries, they all were of the opinion that, in fact, he was intoxicated and not reacting to his injuries.

In *Lindsay v. Appleby* (1980), 91 Ill. App. 3d 705, 414 N.E.2d 885, this court determined that the trial court did not err by permitting an emergency medical technician to testify to his opinion that the defendant was intoxicated at the time of the accident. The witness based his opinion that the defendant was intoxicated upon the strong odor of alcohol on the defendant's breath and the fact that he became uncooperative and belligerent when the witness attempted to attend to his injuries. While the medical technician admitted that injured persons who are not intoxicated may be belligerent and that the defendant's attitude could have been the result of his injury, he said, nevertheless, his opinion was that the defendant was intoxicated.

Here, all three witnesses gave their opinions that Arias was intoxicated. They also admitted that Arias could have been reacting to a head injury. However, even after considering that possibility, each formed an opinion based upon his observation that Arias was intoxicated. They considered such factors as the odor of alcohol, the way Arias talked and the way he acted. Accordingly, we find that there was sufficient evidence of intoxication and find that the trial court did not err by not striking the paramedics' testimony. Furthermore, since there was sufficient evidence of intoxication, the trial court's denials of the defendants' motion to sever the dramshop claim and defendants' motion *in limine* were not error.

Finally, the defendants contend that numerous trial errors mandate a reversal of the trial court's judgment in its entirety or a reversal of the award of damages. The defendants assert that these errors are *inter alia*: the failure of the trial court to strike the testimony of Thomas Marrs as inherently improbable; the failure of the trial court to direct a verdict in favor of defendant Cuomo, in that Arias was not within the scope of employment; and that the jury's verdict was grossly excessive and the result of passion and prejudice.

We have reviewed the record here and do not find the testimony of Thomas Marrs inherently improbable such that it should be stricken. (See *Bucktown Partners v. Johnson* (1983), 119 Ill. App. 3d

346, 456 N.E.2d 703.) The alleged inconsistencies or contradictions asserted by the defendants merely go to the credibility of the witness and the probative value of his testimony, which is for the jury to determine. *Sparling v. Peabody Coal Co.* (1974), 59 Ill. 2d 491, 322 N.E.2d 5.

We also have considered the defendants' assertion concerning the issue of whether Arias was within the scope of his employment and find that the jury was adequately instructed on this issue and that the determination of this issue was clearly a jury question. See *Bell v. Reid* (1983), 118 Ill. App. 3d 310, 454 N.E.2d 1117; *Sunseri v. Puccia* (1981), 97 Ill. App. 3d 488, 422 N.E.2d 925.

In addition, we do not believe the jury award was excessive or the result of passion, prejudice or undue sympathy. The determination of proper damages rests largely with the discretion of the jury, and the reviewing court will set aside an award as excessive only if the award is so large as to " 'shock the judicial conscience.' " (*Long v. Yellow Cab Co.* (1985), 137 Ill. App. 3d 324, 329, 484 N.E.2d 830, quoting *Kosch v. Monroe* (1982), 104 Ill. App. 3d 1085, 1096, 433 N.E.2d 1062.) As this court stated in *Tonarelli v. Gibbons* (1984), 121 Ill. App. 3d 1042, 1050, 460 N.E.2d 464, after examining the record there:

> "[W]e are convinced that the verdict finds support in the evidence and that the jury was not acting under an improper motive. As stated in 25A C.J.S. *Death* sec. 115 (1966), '[t]here is necessarily difficulty in fixing a pecuniary value on human life; the amount of compensation to be recovered must depend to quite an extent on the good judgment of the jury under proper instructions from the court. *** [T]he assessment of damages must be left to the sound, deliberate, fair, or intelligent judgment, or common or good sense, of the jury; and the jury may allow such damages as they deem reasonable in accordance with their common knowledge, experience, and good sense.' "

See *Fedt v. Oak Lawn Lodge, Inc.* (1985), 132 Ill. App. 3d 1061, 478 N.E.2d 469.

We, too, are satisfied that the verdict here finds support in the evidence in the record and that the jury was properly instructed. The decedent was a hard-working butcher who was earning approximately $28,798 per year at his full-time job at the time of his death and would, according to the testimony, have been earning approximately $41,000 at the time of trial. He was a dedicated father and a loving husband, who was survived by his wife and five minor children. We cannot say that the verdict was excessive under the circumstances

here. Also, after reviewing the record as a whole and considering the fact that the defendants are entitled to a fair trial, not a perfect trial (*Duffy v. Midlothian Country Club* (1985), 135 Ill. App. 3d 429, 481 N.E.2d 1037), we do not find any of the other claimed errors of the trial court sufficient to warrant the verdict being set aside. *Fedt v. Oak Lawn Lodge, Inc.* (1985), 132 Ill. App. 3d 1061, 478 N.E.2d 469.

Accordingly, for the reasons stated above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.